1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF HAWAII

3
     UNITED STATES OF AMERICA,    )    CRIMINAL NO. 24-00005-DKW
4                                 )
              Plaintiff,          )    Honolulu, Hawaii
5                                 )
          vs.                     )    January 22, 2024
6                                 )
     JOHN B. STANCIL,             )    INITIAL APPEARANCE, WAIVER
7                                 )    OF INDICTMENT, ARRAIGNMENT
              Defendant.          )    AND PLEA TO THE FELONY
8    _____ )    OFFENSE

9                        TRANSCRIPT OF PROCEEDINGS
10            BEFORE THE HONORABLE DERRICK K. WATSON,
              CHIEF UNITED STATES DISTRICT COURT JUDGE
11
     APPEARANCES:
12

13   For the Plaintiff:          MARK INCIONG, ESQ.
                                  MICHAEL DAVID NAMMAR, ESQ.
14                                Office of the United States Attorney
                                  PJKK Federal Building
15                                300 Ala Moana Boulevard, Suite 6100
                                  Honolulu, Hawaii  96850
16
     For the Defendant:          WALTER J. RODBY, ESQ.
17                                Law Office of Walter J. Rodby
                                  733 Bishop Street #2050A
18                                Honolulu, HI 96813

19                                CAROLINE ELLIOT, ESQ.
                                  Law Office of Caroline M. Elliot
20                                P.O. Box 3254
                                  Honolulu, HI 96801
21
     Official Court Reporter:    Gloria T. Bediamol, RPR RMR CRR FCRR
22                                United States District Court
                                  300 Ala Moana Boulevard
23                                Honolulu, Hawaii 96850

24
      Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

1    January 22, 2024                                    7:19 a.m.

07:19AM    2        THE CLERK:  Criminal Number 24-00005-DKW, United

07:19AM    3    States of America versus John B. Stancil.

07:19AM    4        This case has been called for initial appearance,

07:19AM    5    waiver of indictment, arraignment and plea to the felony

07:19AM    6    offense.

07:19AM    7        Counsel, please make your appearances for the record.

07:19AM    8        MR. INCIONG:  Good morning, Your Honor.  Mark Inciong

07:19AM    9    and Michael Nammar for the United States.

07:19AM    10        THE COURT:  Good morning, gentlemen.

07:19AM    11        MR. RODBY:  Good morning, Judge Watson.  Walter Rodby

07:19AM    12    and Caroline Elliot on behalf of John Stancil.

07:19AM    13        THE COURT:  Good morning to all three of you as well.

07:19AM    14    You may be seated.  I'm just getting used to the different

07:19AM    15    surroundings here, and I apologize, I'm a little disabled this

07:19AM    16    morning.  I hurt my back a bit this weekend, so please be

07:19AM    17    patient with me as I get up and down.

07:19AM    18        So we are here this morning because, as I understand

07:19AM    19    it, Defendant Stancil wishes to accomplish at least two things

07:20AM    20    this morning:  First of all, to waive indictment and to proceed

07:20AM    21    via the information filed by the U.S. Attorney yesterday, as

07:20AM    22    well as then to plead guilty to the single count set forth in

07:20AM    23    that information pursuant to a plea agreement with the

07:20AM    24    U.S. Attorney's office.

07:20AM    25        Mr. Stancil, before accepting either your waiver or

| | | |
|---|---|---|
| 07:20AM | 1 | your plea this morning, there are a few questions that I need |
| 07:20AM | 2 | to ask you.  Those questions are designed to ensure that your |
| 07:20AM | 3 | decisions this morning are both knowing and voluntary.  If I |
| 07:20AM | 4 | ask you anything at all this morning that is confusing or |
| 07:20AM | 5 | unclear or ambiguous to you, I promise you I'm not trying to do |
| 07:20AM | 6 | any of those things; but if I do, please point that out to me |
| 07:20AM | 7 | and I'll do my very best to ask a better question; okay? |
| 07:20AM | 8 | THE DEFENDANT:  Yes, Your Honor. |
| 07:20AM | 9 | Please swear the defendant. |
| 07:20AM | 10 | THE CLERK:  Please rise and raise your right hand. |
| 07:21AM | 11 | (The defendant was sworn to answer truthfully.) |
| 07:21AM | 12 | THE COURT:  Please understand, sir, that you have now |
| 07:21AM | 13 | taken an oath to answer my questions this morning truthfully. |
| 07:21AM | 14 | If you do anything other than that, you could be subjecting |
| 07:21AM | 15 | yourself to additional charges.  Do you understand that? |
| 07:21AM | 16 | THE DEFENDANT:  Yes. |
| 07:21AM | 17 | THE COURT:  Please state your full name. |
| 07:21AM | 18 | THE DEFENDANT:  John Stancil. |
| 07:21AM | 19 | THE COURT:  If you could pull the microphone a little |
| 07:21AM | 20 | bit closer. |
| 07:21AM | 21 | THE DEFENDANT:  John Stancil. |
| 07:21AM | 22 | THE COURT:  Perfect.  I can hear you better that way, |
| 07:21AM | 23 | and I'm sure Ms. Bediamol would appreciate that as well. |
| 07:21AM | 24 | How old you are you, sir? |
| 07:21AM | 25 | THE DEFENDANT:  36 years old. |

| | | |
|---|---|---|
| 07:21AM | 1 | THE COURT:  What's the highest level of education that |
| 07:21AM | 2 | you received? |
| 07:21AM | 3 | THE DEFENDANT:  I believe 11th to the beginning of |
| 07:21AM | 4 | 12th, but I got my GED. |
| 07:21AM | 5 | THE COURT:  Okay, good.  Sensible thing to do.  Any |
| 07:21AM | 6 | classes beyond your GED, community college, anything like that? |
| 07:21AM | 7 | THE DEFENDANT:  No, Your Honor. |
| 07:21AM | 8 | THE COURT:  Your most recent employer -- I'm sorry, go |
| 07:21AM | 9 | ahead. |
| 07:21AM | 10 | THE DEFENDANT:  Just a CDL program for my commercial |
| 07:21AM | 11 | driver's license. |
| 07:21AM | 12 | THE COURT:  Another good thing to have.  Your most |
| 07:21AM | 13 | recent employer was whom? |
| 07:21AM | 14 | THE DEFENDANT:  I don't know exactly who, but |
| 07:21AM | 15 | sometimes my pay stubs would say cast and crew or it was for |
| 07:21AM | 16 | the studios.  I drive for the movies. |
| 07:21AM | 17 | THE COURT:  You were a driver for that? |
| 07:21AM | 18 | THE DEFENDANT:  Yes, in the Teamsters union. |
| 07:22AM | 19 | THE COURT:  Okay.  So you moved the movie sets from |
| 07:22AM | 20 | location to location? |
| 07:22AM | 21 | THE DEFENDANT:  Yes.  Movie sets, cast, actors, makeup |
| 07:22AM | 22 | artists, whatever. |
| 07:22AM | 23 | THE COURT:  Based on our interaction, we've had many |
| 07:22AM | 24 | hearings over the months and just in our limited interaction |
| 07:22AM | 25 | here this morning, it appears that you understand, speak and |

07:22AM   1   writing English all just fine; is that fair?

07:22AM   2            THE DEFENDANT:  Yes, Your Honor.

07:22AM   3            THE COURT:  Have you taken -- I know you're in

07:22AM   4   custody, but have you taken any type of drugs, legal or

07:22AM   5   illegal, within the last 48 hours?

07:22AM   6            THE DEFENDANT:  No, I have not, Your Honor.

07:22AM   7            THE COURT:  Have you consumed alcohol within the

07:22AM   8   24 hours?

07:22AM   9            THE DEFENDANT:  No, I have not.

07:22AM  10            THE COURT:  Is it fair to say then, sir, that you are

07:22AM  11   sober and thinking clearing this morning?

07:22AM  12            THE DEFENDANT:  Yes, Your Honor.

07:22AM  13            THE COURT:  Mr. Stancil, what is your understanding of

07:22AM  14   the purpose of this morning's hearing?

07:22AM  15            THE DEFENDANT:  To resolve this case and plead guilty.

07:22AM  16            THE COURT:  Have you had enough time to discuss the

07:22AM  17   decisions that you are making here this morning whether or not

07:22AM  18   to proceed via information, whether or not to plead guilty to

07:22AM  19   the single count in the information?  Have you had enough time

07:23AM  20   to discuss those decisions as well as this case generally with

07:23AM  21   your two lawyers?

07:23AM  22            THE DEFENDANT:  Yes, Your Honor.

07:23AM  23            THE COURT:  Are you satisfied with their

07:23AM  24   representation of you, I'm speaking of both Ms. Elliot as well

07:23AM  25   as Mr. Rodby, are you satisfied with their representation of

| | | |
|---|---|---|
| 07:23AM | 1 | you thus far in this case? |
| 07:23AM | 2 | THE DEFENDANT:  Sure.  Yes, Your Honor. |
| 07:23AM | 3 | THE COURT:  Counsel, do you have any reason to doubt |
| 07:23AM | 4 | Mr. Stancil's capacity or competence to either waive indictment |
| 07:23AM | 5 | or to knowingly and voluntarily enter a plea this morning? |
| 07:23AM | 6 | MR. RODBY:  No, Judge. |
| 07:23AM | 7 | THE COURT:  Mr. Stancil, I assume you've seen a copy |
| 07:23AM | 8 | of the government's information filed yesterday, January 21st |
| 07:23AM | 9 | of this year? |
| 07:23AM | 10 | THE DEFENDANT:  Yes, I just reviewed it. |
| 07:23AM | 11 | THE COURT:  Do you wish to have that information, it |
| 07:23AM | 12 | is an eight-paged document, read to you in its entirety? |
| 07:23AM | 13 | THE DEFENDANT:  I went over it already, Your Honor. |
| 07:23AM | 14 | You don't have to. |
| 07:23AM | 15 | THE COURT:  The single count set forth in the |
| 07:23AM | 16 | information in general charges you with conspiring to violate |
| 07:23AM | 17 | the racketeering laws of the United States in violation of |
| 07:23AM | 18 | Title 18 of the United States Code, Section 1862(d).  Have you |
| 07:24AM | 19 | discussed this particular charge and allegations associated |
| 07:24AM | 20 | with it with counsel? |
| 07:24AM | 21 | THE DEFENDANT:  Yes, Your Honor. |
| 07:24AM | 22 | THE COURT:  Are you confident, based on your own |
| 07:24AM | 23 | review and discussions with counsel, that you understand the |
| 07:24AM | 24 | nature of the charges brought against you? |
| 07:24AM | 25 | THE DEFENDANT:  Yes, Your Honor. |

| | | |
|---|---|---|
| 07:24AM | 1 | THE COURT:  Do you have any questions at all, sir, |
| 07:24AM | 2 | with respect to these charges? |
| 07:24AM | 3 | THE DEFENDANT:  No, Your Honor. |
| 07:24AM | 4 | THE COURT:  Do you understand, Mr. Stancil, that you |
| 07:24AM | 5 | do have the right to be charged -- a constitutional right to be |
| 07:24AM | 6 | charged by a grand jury indictment, but you can waive that |
| 07:24AM | 7 | right and consent to proceed via information filed by the |
| 07:24AM | 8 | U.S. Attorney? |
| 07:24AM | 9 | THE DEFENDANT:  Yes, Your Honor. |
| 07:24AM | 10 | THE COURT:  Do you also understand that unless you |
| 07:24AM | 11 | waive indictment you cannot be charged with this particular |
| 07:24AM | 12 | felony offense unless the grand jury were to return an |
| 07:24AM | 13 | indictment finding that there is probable cause to believe that |
| 07:24AM | 14 | a federal crime has been committed and that you committed it? |
| 07:24AM | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 07:24AM | 16 | THE COURT:  There are some details regarding the grand |
| 07:24AM | 17 | jury process that I want to make sure you understand, likely |
| 07:24AM | 18 | you've reviewed these with counsel, but nonetheless I'm going |
| 07:24AM | 19 | to go over these with you myself now; the first of which is, do |
| 07:25AM | 20 | you understand, sir, that a grand jury is a body of at least 16 |
| 07:25AM | 21 | about not more than 23 impartial its from this community? |
| 07:25AM | 22 | If you choose not to waive indictment, the United |
| 07:25AM | 23 | States or the U.S. Attorney's office through the |
| 07:25AM | 24 | U.S. Attorney's could present evidence to the grand jury.  The |
| 07:25AM | 25 | grand jury would then vote in private, as I said, to determine |

07:25AM   1   if there is probable cause to believe that a federal crime has

07:25AM   2   been committed and that you committed it.  If at least 12 of

07:25AM   3   those grand jurors vote to so find, they would return what's

07:25AM   4   known as an indictment against you.

07:25AM   5        On the other hand, if at least 12 of those same grand

07:25AM   6   jurors do not vote in that way, they would not return an

07:25AM   7   indictment against you.  In other words, based on the evidence

07:25AM   8   and other information presented to it by the U.S. Attorney's

07:25AM   9   office, the grand jury may or may not indict you.  If you waive

07:25AM   10  indictment by a grand jury, the information filed by the

07:25AM   11  U.S. Attorney in this matter on January 21st of 2024 will act

07:25AM   12  exactly as if an indictment had issued.  Do you understand that

07:26AM   13  process?

07:26AM   14        THE DEFENDANT:  Yes, Your Honor.

07:26AM   15        THE COURT:  Do you have any questions with respect to

07:26AM   16  that process?

07:26AM   17        THE DEFENDANT:  No, I do not, Your Honor.

07:26AM   18        THE COURT:  And have you had a chance to discuss that

07:26AM   19  grand jury process with counsel?

07:26AM   20        THE DEFENDANT:  Yes.

07:26AM   21        THE COURT:  Is it your desire, Mr. Stancil, to waive

07:26AM   22  indictment and to proceed via information?

07:26AM   23        THE DEFENDANT:  Yes, Your Honor.

07:26AM   24        THE COURT:  Now, to accomplish that, I think you've

07:26AM   25  done at least two things that I'm aware of, one of them is to

07:26AM   1   execute the AO 455 form, which is a single-paged form entitled

07:26AM   2   Waiver of an Indictment.  Can you confirm, sir, that that is

07:26AM   3   your signature on that form with today's date, January 22,

07:26AM   4   2024?

07:26AM   5            THE DEFENDANT:  Yes, that's my signature, Your Honor.

07:26AM   6            THE COURT:  Mr. Rodby, that appears to be your

07:26AM   7   signature as well?

07:26AM   8            MR. RODBY:  Yes, sir.

07:26AM   9            THE COURT:  All right.  So there's a spot on the form

07:26AM  10   for the Court to sign.  I'm going to go ahead and do that right

07:26AM  11   now, and I will hand it to Ms. Kimura; she will place it on the

07:26AM  12   docket in this matter later today.  The Court therefore finds

07:26AM  13   that the defendant, Mr. Stancil, knowingly and voluntarily

07:26AM  14   waives indictment and consents to proceed via information.

07:26AM  15            This is the party's first appearance in this case, and

07:27AM  16   since it was only filed yesterday, as a result the Court

07:27AM  17   reminds the government, pursuant to Rule 5 of its disclosure

07:27AM  18   obligations under Brady and its progeny together with potential

07:27AM  19   consequences of violating these obligations, which include

07:27AM  20   dismissal of the charges.  This obligation and the consequences

07:27AM  21   are further detailed in the Court's February 1, 2021 general

07:27AM  22   order, the terms of which are incorporated.

07:27AM  23            Mr. Stancil, I understand then that you wish to plead

07:27AM  24   guilty to Count 1 of the information, the substance of which

07:27AM  25   I've already summarized.  Has anyone, sir, threatened, forced

07:27AM  1  or coerced you into pleading guilty?

07:27AM  2          THE DEFENDANT:  No, Your Honor.

07:27AM  3          THE COURT:  To your knowledge, has anyone threatened,

07:27AM  4  forced or coerced anyone close to you, meaning a close friend

07:27AM  5  or relative, in order to get you to plead guilty?

07:27AM  6          THE DEFENDANT:  No, Your Honor.

07:27AM  7          THE COURT:  Has anyone made any promises or assurances

07:27AM  8  to you in order to get you to plead guilty, other than the

07:27AM  9  promises that the government has made in its written plea

07:27AM  10  agreement with you, the terms of which we will go over in some

07:28AM  11  detail in just a minute?

07:28AM  12          THE DEFENDANT:  No, Your Honor, no promises was made.

07:28AM  13          THE COURT:  Are you pleading this morning because you

07:28AM  14  are guilty of the conduct alleged in Count 1 of the

07:28AM  15  information?

07:28AM  16          THE DEFENDANT:  Yes.

07:28AM  17          THE COURT:  Mr. Inciong or Mr. Nammar, I'm not sure

07:28AM  18  which one --

07:28AM  19          MR. INCIONG:  I will handle it, Your Honor.

07:28AM  20          THE COURT:  All right.  Mr. Inciong, what are the

07:28AM  21  potential penalties that Mr. Stancil faces for pleading guilty

07:28AM  22  to Count 1?

07:28AM  23          MR. INCIONG:  The maximum penalties are a 20-year term

07:28AM  24  of imprisonment, a $250,000 fine, there is a term of supervised

07:28AM  25  release of up to three years, and a mandatory $100 special

07:28AM  1    assessment.  And there is a restitution provision as well, Your
07:28AM  2    Honor, that may be applicable.
07:28AM  3            THE COURT:  All right.  That's at 7 Charlie of the
07:28AM  4    plea agreement?
07:28AM  5            MR. INCIONG:  Correct.
07:28AM  6            THE COURT:  The term of imprisonment, I may have heard
07:28AM  7    you unclearly, but I just want to be sure, the term of
07:28AM  8    imprisonment that Mr. Stancil faces is up to 20 years?
07:28AM  9            MR. INCIONG:  Up to 20 years, yes.
07:28AM  10            THE COURT:  Mr. Rodby, do you agree with the potential
07:28AM  11    penalties that your client faces for pleading to Count 1 as
07:29AM  12    just set forth by AUSA Inciong?
07:29AM  13            MR. RODBY:  Yes, Judge.
07:29AM  14            THE COURT:  Mr. Stancil, do you, sir, understand the
07:29AM  15    potential penalties that you face for pleading to this
07:29AM  16    particular count, the government's lawyer, Mr. Inciong, just
07:29AM  17    set forth, those penalties?
07:29AM  18            THE DEFENDANT:  Yes, Your Honor.
07:29AM  19            THE COURT:  Now, you have entered into a written plea
07:29AM  20    agreement with the U.S. Attorney's office; is that correct?
07:29AM  21            THE DEFENDANT:  Yes.
07:29AM  22            THE COURT:  Have you read that document in full?
07:29AM  23            THE DEFENDANT:  Yes, I did.
07:29AM  24            THE COURT:  And have you had a chance, sir, to discuss
07:29AM  25    it with counsel?

07:29AM   1          THE DEFENDANT:  I did, Your Honor.

07:29AM   2          THE COURT:  And based on your own review and

07:29AM   3   discussions with counsel, are you confident that you understand

07:29AM   4   each of the terms of your plea agreement with the

07:29AM   5   U.S. Attorney's office?

07:29AM   6          THE DEFENDANT:  Yes, I do.

07:29AM   7          THE COURT:  Now, I have what appears to be the

07:29AM   8   original of that plea agreement in front of me; it's a 19-paged

07:29AM   9   document.  Is that your signature, Mr. Stancil, that appears on

07:29AM   10  the last page of the document alongside that of your counsel

07:29AM   11  dated January 20th of this year?

07:29AM   12         THE DEFENDANT:  That is my signature, Your Honor.

07:29AM   13         THE COURT:  Does the plea agreement reflect the entire

07:29AM   14  agreement that you have with the U.S. Attorney's office,

07:29AM   15  Mr. Stancil?

07:29AM   16         THE DEFENDANT:  Yes, that I'm aware of.  Yes.

07:30AM   17         THE COURT:  In other words, did the government make

07:30AM   18  any verbal or other promises to you that they did not put into

07:30AM   19  the written plea agreement?

07:30AM   20         THE DEFENDANT:  They did not.

07:30AM   21         THE COURT:  Do you understand that the Court is not

07:30AM   22  required to accept this plea agreement?  I won't make that

07:30AM   23  determination however until after a presentence investigation

07:30AM   24  and report have been prepared.

07:30AM   25         THE DEFENDANT:  Yes, I understand.

| | | |
|---|---|---|
| 07:30AM | 1 | THE COURT:  Do you also understand that any |
| 07:30AM | 2 | stipulations in the plea agreement are stipulations or |
| 07:30AM | 3 | agreements between you and the Department of Justice and that |
| 07:30AM | 4 | the Court is specifically not bound by those stipulations? |
| 07:30AM | 5 | THE DEFENDANT:  Yes. |
| 07:30AM | 6 | THE COURT:  Mr. Inciong, would please then describe |
| 07:30AM | 7 | the essential terms of the government's plea agreement with Mr. |
| 07:30AM | 8 | Stancil to include any appellate waiver provisions, please? |
| 07:30AM | 9 | MR. INCIONG:  Yes, Your Honor.  The agreement between |
| 07:30AM | 10 | the United States and Mr. Stancil is as follows: |
| 07:30AM | 11 | Mr. Stancil has agreed to waive indictment and enter a |
| 07:30AM | 12 | voluntary plea of guilty to the information, which charges him |
| 07:30AM | 13 | with conspiring to violate the racketeering laws of the United |
| 07:30AM | 14 | States, in violation of Title 18, United States Code, Section |
| 07:30AM | 15 | 1962(d) and (c). |
| 07:31AM | 16 | The defendant is aware that he has a right to have |
| 07:31AM | 17 | this felony asserted against him by way of grand jury |
| 07:31AM | 18 | indictment, but he has waived his right, as the Court has |
| 07:31AM | 19 | indicated this morning.  In return, the government has agreed |
| 07:31AM | 20 | to move to dismiss Counts 1, 7, 8, 9, 10, 12, 13, 14, 16, 17, |
| 07:31AM | 21 | 18 and 19 of the third superseding indictment in Criminal |
| 07:31AM | 22 | Number Case 19-00099-DKW as to Mr. Stancil after sentencing. |
| 07:31AM | 23 | The government and the defendant have also agreed to |
| 07:31AM | 24 | be bound by the sentencing stipulations set forth in paragraph |
| 07:31AM | 25 | 10 of this plea agreement.  Mr. Stancil is entering his guilty |

07:31AM  1    plea because he is in fact guilty of conspiring to violate the

07:31AM  2    racketeering laws of the United States as charged in the

07:31AM  3    information.

07:31AM  4        The defendant further agrees that his plea is

07:31AM  5    voluntary and not the result of any force or threats.  There

07:32AM  6    are a number of factual stipulations that begin at page five of

07:32AM  7    the plea agreement and carry over to pages six, seven, eight

07:32AM  8    and conclude on page nine.

07:32AM  9        The parties both agree that the charges to which

07:32AM  10   Mr. Stancil is pleading adequately reflects the seriousness of

07:32AM  11   the actual offense behavior in this matter, and that by

07:32AM  12   accepting this plea agreement no statutory purposes of

07:32AM  13   sentencing would be undermined.

07:32AM  14       In regard to sentencing stipulations, the parties

07:32AM  15   agree that they will jointly request that the sentencing

07:32AM  16   hearing for Mr. Stancil not take place until after trial

07:32AM  17   concludes in the matter of United States of America versus

07:32AM  18   Michael J. Miske, Criminal Case Number 19-00099.  The parties

07:32AM  19   understand however that the Court has final determination over

07:32AM  20   when the sentencing actually will happen.

07:32AM  21       As of the date of this agreement, it is expected that

07:32AM  22   Mr. Stancil will enter a plea of guilty prior to the

07:33AM  23   commencement of trial later today, which will truthfully admit

07:33AM  24   his offense -- his involvement in the offense, excuse me, and

07:33AM  25   related conduct and will not engage in any conduct that is

07:33AM  1  inconsistent with acceptance of responsibility.

07:33AM  2          If all of these events occur, and the defendant's

07:33AM  3  acceptance of responsibility continues through the date of

07:33AM  4  sentencing, a downward adjustment of minus two levels for

07:33AM  5  acceptance of responsibility, pursuant to Guideline Section

07:33AM  6  3E1.1, subparagraph A, and Application Note 3 will be

07:33AM  7  appropriate.

07:33AM  8          The parties agree that notwithstanding the agreement's

07:33AM  9  contained within, this larger plea agreement, the Court is not

07:33AM  10  bound by any stipulations entered into by the parties, and the

07:33AM  11  Court will be the final determiner of any facts relevant to

07:33AM  12  sentencing with the aid of the presentence report.  The parties

07:33AM  13  also understand that the Court's rejection of any stipulation

07:33AM  14  between the between does not constitute a refusal to accept

07:34AM  15  this plea agreement, since the Court is not expressly bound by

07:34AM  16  any of the parties' stipulations.

07:34AM  17          Your Honor, as of today's date, the parties represent

07:34AM  18  that there are no material facts in dispute.

07:34AM  19          In regard to appeal and collateral review, Mr. Stancil

07:34AM  20  will typically have the right to appeal both his convictions

07:34AM  21  and sentence in this matter; however, pursuant to the terms of

07:34AM  22  this plea agreement, he is knowingly and voluntarily waiving

07:34AM  23  his right to appeal except in two limited circumstances:

07:34AM  24  First, should the Court sentence Mr. Stancil to a sentence that

07:34AM  25  is above and beyond the guideline range that the Court finds is

| | | |
|---|---|---|
| 07:34AM | 1 | applicable to this case, to Mr. Stancil's case specifically, |
| 07:34AM | 2 | the defendant would retain his right to appeal that portion of |
| 07:34AM | 3 | the sentence which is above the guideline range found to be |
| 07:34AM | 4 | applicable. |
| 07:34AM | 5 | Similarly, Mr. Stancil will retain his right to |
| 07:34AM | 6 | pursue, on collateral attack or otherwise, any claim of |
| 07:34AM | 7 | ineffective assistance of counsel that he believes he may have |
| 07:34AM | 8 | in this matter.  The prosecution will retain its right to |
| 07:35AM | 9 | appeal nonetheless. |
| 07:35AM | 10 | There are certain financial disclosure requirements |
| 07:35AM | 11 | that are laid out beginning on paragraph 14, on page 12.  As to |
| 07:35AM | 12 | imposition of sentence, the defendant understands that the |
| 07:35AM | 13 | Court, in imposing his sentence, will consider the provisions |
| 07:35AM | 14 | of the sentencing guidelines but that there is no promise or |
| 07:35AM | 15 | guarantee as to the applicability or non-applicability of those |
| 07:35AM | 16 | guidelines, notwithstanding any representations or predictions |
| 07:35AM | 17 | that it may have been made from any source. |
| 07:35AM | 18 | The defendant also understands that this plea |
| 07:35AM | 19 | agreement will not be accepted or rejected by the Court until |
| 07:35AM | 20 | it has had an opportunity to review the presentence report that |
| 07:35AM | 21 | will be prepared in this matter. |
| 07:35AM | 22 | The defendant understands that the Court will not |
| 07:35AM | 23 | accept an agreement unless the Court determines that the |
| 07:35AM | 24 | remaining charges or charge in this case adequately reflects |
| 07:35AM | 25 | the seriousness of the actual offense behavior and will not |

07:35AM  1   undermine any statutory purpose of sentencing.

07:36AM  2        Mr. Stancil is waiving a number of important trial

07:36AM  3   rights, including the right to proceed to a jury and have that

07:36AM  4   jury decide his fate beyond a reasonable doubt.  Included among

07:36AM  5   those rights would be Mr. Stancil's right to testify or not to

07:36AM  6   testify and have his right to maintain his silence not be used

07:36AM  7   against him in any way.

07:36AM  8        In regard to use of police statements, if after

07:36AM  9   signing this plea agreement Mr. Stancil decides not to plead

07:36AM  10  guilty as provided therein, or if he pleads guilty but

07:36AM  11  subsequently makes a motion to withdraw that guilty plea before

07:36AM  12  this Court, and the Court would grant that motion, the

07:36AM  13  defendant agrees that any admission of guilt that he makes by

07:36AM  14  signing this plea agreement or that he makes by pleading guilty

07:36AM  15  in today's proceeding could be used against him at that

07:36AM  16  subsequent trial, if the defendant would later proceed to

07:36AM  17  trial.

07:36AM  18       The defendant is voluntarily, knowingly and

07:36AM  19  intelligently waiving any protections afforded by both Rule 11F

07:37AM  20  of the Criminal Rules of Procedure and Rule 410 of the Federal

07:37AM  21  Rules of Evidence regarding the use of statements made either

07:37AM  22  in this agreement and/or during the course of pleading guilty

07:37AM  23  when and if the plea of guilty is later withdrawn.

07:37AM  24       The only exception is where the defendant fully

07:37AM  25  complies with this agreement but the Court nonetheless rejects

07:37AM   1   the plea agreement.  Under that limited circumstance, the

07:37AM   2   United States may not use any statements of Mr. Stancil against

07:37AM   3   him for any purpose.

07:37AM   4        The defendant understands that the prosecution will

07:37AM   5   apprise both the Court and U.S. Probation Officer of the

07:37AM   6   nature, scope and extent of his conduct regarding the charges

07:37AM   7   against him, as well as any related matters and any aggravating

07:37AM   8   or mitigating factors that may apply to his sentencing.

07:37AM   9        To become effective, this plea agreement must be

07:37AM  10   signed by all signatories.  That has been done, Your Honor, at

07:37AM  11   page 19.

07:37AM  12        Finally, should the Court refuse to accept this plea

07:37AM  13   agreement, both parties understand that it would become null

07:38AM  14   and void and neither party would be bound thereto.  Those are

07:38AM  15   the essential components.

07:38AM  16        THE COURT:  Mr. Rodby, do you agree that AUSA Inciong

07:38AM  17   has described accurately the essential terms of your client's

07:38AM  18   plea agreement with the United States?

07:38AM  19        MR. RODBY:  Yes, Judge Watson.

07:38AM  20        THE COURT:  All right.  Mr. Stancil, there are some

07:38AM  21   important provisions, no doubt, that Mr. Inciong, I agree, has

07:38AM  22   accurately described that are in your plea agreement.  There is

07:38AM  23   one provision in particular that I want to call out and

07:38AM  24   highlight for your attention.  We sometimes refer to it as the

07:38AM  25   appellate waiver provision.  In your particular agreement, it

07:38AM    1    appears at paragraph 13.  I've read this exact same verbatim
07:38AM    2    language in paragraph 13 dozens, if not hundreds, of times; so
07:38AM    3    there is nothing unique about it.
07:38AM    4         What paragraph 13, Mr. Stancil, in sum and substance
07:38AM    5    says, is by virtue of entering into this plea agreement with
07:38AM    6    the United States, you are agreeing to a very broad, general
07:38AM    7    waiver of your rights to challenge the Court's final judgment
07:38AM    8    in this case, including the sentence that I impose.  That broad
07:39AM    9    waiver includes all legally waivable claims, and there are only
07:39AM   10    two limited exceptions to that broad waiver.
07:39AM   11         The first of those exceptions is, you mentioned a few
07:39AM   12    minutes ago that you've been satisfied with your attorneys'
07:39AM   13    representation of you thus far in this case.  If that were to
07:39AM   14    change, and if you believe you were rendered the ineffective
07:39AM   15    assistance of counsel, paragraph 13 preserves your right to
07:39AM   16    challenge the Court's final judgment on that basis.  And you
07:39AM   17    may do so via what's called a collateral attack.  We sometimes
07:39AM   18    refer to that as a Section 2255 petition.
07:39AM   19         In addition, the second limited exception is even more
07:39AM   20    limited than the first.  It applies only if the Court were to
07:39AM   21    sentence you to something above the applicable sentencing
07:39AM   22    guideline range.  If I were to do that, you retain your right
07:39AM   23    by paragraph 13 to challenge only that portion of the Court's
07:39AM   24    sentence above the applicable guideline range and you may do
07:40AM   25    that either by collateral attack, the 2255 petition that I

07:40AM  1   mentioned a minute ago, or via direct appeal.

07:40AM  2        The government for its part is not agreeing to waive

07:40AM  3   any of its appeal rights.  You understand the import of

07:40AM  4   paragraph 13?

07:40AM  5        THE DEFENDANT:  Yes, Your Honor.

07:40AM  6        THE COURT:  This plea agreement also says that you

07:40AM  7   would be giving up or waiving your trial and trial related

07:40AM  8   rights.  I know you are familiar with it because those rights

07:40AM  9   that you are waiving appear at paragraphs 17 and 18 of your

07:40AM  10   plea agreement, the same agreement that you said you reviewed

07:40AM  11   both alone and with the benefit of counsel and that you have

07:40AM  12   had the benefit of inquiring with counsel regarding all of the

07:40AM  13   terms of your plea agreement up to now.

07:40AM  14        Even though you've done that, I want to go over these

07:40AM  15   rights with you myself now; the first of which is, do you

07:40AM  16   understand, sir, that under the constitution and laws of the

07:40AM  17   United States, you have the right not to plead guilty and to

07:40AM  18   proceed via trial including a trial by jury on the charges

07:41AM  19   brought against you?

07:41AM  20        THE DEFENDANT:  Yes, Your Honor.

07:41AM  21        THE COURT:  Do you further understand, Mr. Stancil,

07:41AM  22   that if you were to proceed to trial, you would be presumed

07:41AM  23   innocent, which means that the government would have the burden

07:41AM  24   of proving your guilt to a jury beyond a reasonable doubt, and

07:41AM  25   that at no time would you have the burden of proving that you

07:41AM   1   are not guilty?

07:41AM   2          THE DEFENDANT:  Yes, Your Honor.

07:41AM   3          THE COURT:  Do you understand further that in order to

07:41AM   4   be found guilty at any trial, a jury of 12 persons from this

07:41AM   5   local community would have to find your guilt not only beyond a

07:41AM   6   reasonable doubt, but they would have to do so unanimously?

07:41AM   7          THE DEFENDANT:  Yes, Your Honor.

07:41AM   8          THE COURT:  Mr. Stancil, do you further understand

07:41AM   9   that at all stages of the prosecution, which includes trial,

07:41AM  10   you have the right, as you do here this morning, to the

07:41AM  11   assistance of counsel; and if at any point in time you could

07:41AM  12   not afford counsel, one would be appointed for you by the Court

07:41AM  13   at no cost to you?

07:41AM  14          THE DEFENDANT:  Yes, Your Honor.

07:41AM  15          THE COURT:  Do you understand that at any trial you

07:41AM  16   have the right to see and to hear all of the government's

07:41AM  17   evidence and witnesses and to have those same witnesses

07:42AM  18   questioned by your own attorney?

07:42AM  19          THE DEFENDANT:  Yes, Your Honor.

07:42AM  20          THE COURT:  Do you understand further that at any

07:42AM  21   trial you could object to any of the evidence offered by the

07:42AM  22   United States and you could present evidence of your own in

07:42AM  23   your case in chief, including through witness testimony that is

07:42AM  24   compelled through the Court's subpoena power, if that were

07:42AM  25   necessary.

07:42AM  1          THE DEFENDANT:  Yes, Your Honor.

07:42AM  2          THE COURT:  Mr. Stancil, do you further understand

07:42AM  3    that at any trial you would have the right to testify on your

07:42AM  4    own behalf, if you chose to do that; but if you chose not to,

07:42AM  5    no inference or suggestion of your guilt could be drawn by the

07:42AM  6    jury by the fact that you chose not to testify?

07:42AM  7          THE DEFENDANT:  Yes, Your Honor.

07:42AM  8          THE COURT:  Mr. Stancil, do you understand that by

07:42AM  9    entering a plea of guilty here this morning, and if I were to

07:42AM  10   accept that plea, there will be no trial and you will have

07:42AM  11   given up all these trial related rights that I've just

07:42AM  12   mentioned?

07:42AM  13         THE DEFENDANT:  Yes, Your Honor.

07:42AM  14         THE COURT:  Do you further understand that if you

07:42AM  15   proceed with your plea, you will also need to give up or waive

07:42AM  16   your right not to incriminate yourself?  And the reason for

07:42AM  17   that is I'm about to ask you a few questions about what you did

07:42AM  18   that makes you guilty of Count 1 of the information and those

07:42AM  19   questions will need to be answered.

07:43AM  20         THE DEFENDANT:  Yes, Your Honor.

07:43AM  21         THE COURT:  Do you have any questions, sir, regarding

07:43AM  22   any of these rights that I have just described?

07:43AM  23         THE DEFENDANT:  No, I do not.

07:43AM  24         THE COURT:  Mr. Stancil, knowing these rights, do you

07:43AM  25   still wish to proceed with your plea?

07:43AM   1              THE DEFENDANT: Yes, sir.

07:43AM   2              THE COURT:  You are a United States citizen; is that

07:43AM   3  correct?

07:43AM   4              THE DEFENDANT:  Yes.

07:43AM   5              THE COURT:  You should understand that as a U.S.

07:43AM   6  citizen then that the charge that has been brought against you,

07:43AM   7  Count 1 of the information, the same charge that you intend to

07:43AM   8  plead guilty to, is considered a felony offense.  If your plea

07:43AM   9  is accepted and you are adjudged guilty of this offense, that

07:43AM  10  adjudication by the Court could deprive you of some valuable

07:43AM  11  civil rights.  Those civil rights include the right to vote,

07:43AM  12  the right to hold public office, the right to sit on a jury as

07:43AM  13  well as the right to possess or bear a firearm.  Do you

07:43AM  14  understand that?

07:43AM  15              THE DEFENDANT:  Yes, Your Honor.

07:43AM  16              THE COURT:  With regard to sentencing, United States

07:43AM  17  law establishes detailed sentencing guidelines that apply to

07:43AM  18  those who are convicted of, which includes those who plead

07:43AM  19  guilty to federal crimes.  The sentencing judge in this case

07:43AM  20  will most likely be myself.  The sentencing judge must consider

07:44AM  21  these sentencing guidelines.  Additionally, the sentencing

07:44AM  22  judge must consider the statutory sentencing factors that are

07:44AM  23  set forth at Title 18 of the United States Code, Section

07:44AM  24  3553(a).

07:44AM  25              Although the sentencing judge must consider the

07:44AM  1    sentencing guidelines, they are what the name might imply to

07:44AM  2    you.  They are guidelines, which means that they are advisory

07:44AM  3    on this Court only.  Do you understand that?

07:44AM  4           THE DEFENDANT:  Yes, Your Honor.

07:44AM  5           THE COURT:  Have you and your lawyers discussed how

07:44AM  6    the sentencing guidelines might apply to your case?

07:44AM  7           THE DEFENDANT:  Yes, we have.

07:44AM  8           THE COURT:  And if I know Mr. Rodby and Ms. Elliot, I

07:44AM  9    know they used the same word or something very similar to the

07:44AM  10   word that I just used, meaning the word "might."  And that is

07:44AM  11   because, as I sit here today, I cannot with precision tell you

07:44AM  12   how those sentencing guidelines apply to your case.  I will not

07:44AM  13   be able to do that until after a presentence investigation and

07:44AM  14   report have been prepared.  That process typically takes three

07:45AM  15   to four months.  I will then circulate -- or the probation

07:45AM  16   office will circulate a draft of that report to the lawyers.

07:45AM  17   They will then have the opportunity to provide me with any

07:45AM  18   comments on or objections to the contents of that report that

07:45AM  19   either side might have.  So that process takes a little bit of

07:45AM  20   time to play itself out.  Do you understand so far?

07:45AM  21          THE DEFENDANT:  Yes, Your Honor.

07:45AM  22          THE COURT:  About four months from now, I will be able

07:45AM  23   to sit here before you and tell you with precision how those

07:45AM  24   sentencing guidelines apply to your case.  I will also be able

07:45AM  25   to tell you at that same time how I see the statutory section

07:45AM  1    3553(a) factors applying to your case.  When I do that, do you
07:45AM  2    understand that I could impose a sentence that is more severe
07:45AM  3    than what you expect, is more severe than what the sentencing
07:45AM  4    guidelines call for up to the maximum permitted by law?
07:45AM  5              THE DEFENDANT:  Yes, Your Honor.
07:45AM  6              THE COURT:  Do you understand, Mr. Stancil, that if I
07:46AM  7    were to do that, if I were to impose a sentence that is more
07:46AM  8    severe than what you expect or more severe than what the
07:46AM  9    guidelines call for, you will nonetheless be bound by both your
07:46AM  10   plea as well as your plea agreement and will have no right to
07:46AM  11   withdraw from either at least on that basis?
07:46AM  12             THE DEFENDANT:  Yes, Your Honor.
07:46AM  13             THE COURT:  Do you understand, Mr. Stancil, that
07:46AM  14   despite any discussions you may have had with your lawyers,
07:46AM  15   with the lawyers for the United States, or with anyone else
07:46AM  16   regarding the type or the duration of the sentence you are
07:46AM  17   likely to receive or regarding any sentencing recommendation
07:46AM  18   that they may wish to provide to me, I am not bound by those
07:46AM  19   discussions, nor am I bound by any sentencing recommendations
07:46AM  20   provided to me either by counsel, by the U.S. Probation Office,
07:46AM  21   or by anyone else, and I could impose a sentence that is more
07:46AM  22   severe than what you expect up to the maximum permitted by law?
07:46AM  23   Do you understand that?
07:46AM  24             THE DEFENDANT:  Yes, Your Honor.
07:46AM  25             THE COURT:  Has anyone, Mr. Stancil, made any promises

07:46AM    1    to you regarding what your sentence will be?

07:47AM    2              THE DEFENDANT:  No.

07:47AM    3              THE COURT:  Do you understand that at the time of

07:47AM    4    sentencing, there is no limitation on the information that I

07:47AM    5    can consider regarding your character, your background and your

07:47AM    6    conduct, except that the information I use must be sufficiently

07:47AM    7    reliable?

07:47AM    8              THE DEFENDANT:  Yes, Your Honor.

07:47AM    9              THE COURT:  Do you understand that if a term of

07:47AM    10   imprisonment is imposed as part of your sentence, a term of

07:47AM    11   what we call supervised release is very likely to follow; and

07:47AM    12   if you were to violate any of the conditions of supervised

07:47AM    13   release, additional prison time could be imposed?

07:47AM    14             THE DEFENDANT:  Yes, Your Honor.

07:47AM    15             THE COURT:  Do you also understand that in the federal

07:47AM    16   system we have no parole?  What that means practically is, if a

07:47AM    17   term of imprisonment is imposed as part of your sentence, you

07:47AM    18   will not be released early on parole.

07:47AM    19             THE DEFENDANT:  Yes.

07:47AM    20             THE COURT:  Do you understand as part of any final

07:47AM    21   judgment and sentence in this case, the Court could order you

07:47AM    22   to pay a fine as well as a special assessment?

07:47AM    23             THE DEFENDANT:  Yes.

07:47AM    24             THE COURT:  And the Court as well could award

07:47AM    25   restitution.

07:47AM    1              THE DEFENDANT:  Yes.

07:47AM    2              THE COURT:  We're reached the point in this morning's

07:48AM    3      proceedings, Mr. Stancil, that I alluded to a few minutes ago

07:48AM    4      when we talked about the need to waive your right not to

07:48AM    5      incriminate yourself.  I need to be sure that you in fact

07:48AM    6      committed the crime that you have been charged with at Count 1

07:48AM    7      of the information.  The first step in that process is to turn

07:48AM    8      back to the government's counsel, Mr. Inciong, to set forth the

07:48AM    9      elements of that count.

07:48AM   10              MR. INCIONG:  Yes, Your Honor.  For the count charged

07:48AM   11      in the information, conspiracy to violate the racketeering laws

07:48AM   12      of the United States, there are four elements the United States

07:48AM   13      would have to prove beyond a reasonable doubt:

07:48AM   14              First, that there was an agreement between Mr. Stancil

07:48AM   15      and at least one other person that they would conduct or

07:48AM   16      participate, directly or indirectly, in the affairs of an

07:48AM   17      enterprise, in this case the Miske Enterprise, through a

07:48AM   18      pattern of racketeering.

07:48AM   19              Secondly, that the enterprise which would or did exist

07:48AM   20      would or did engage in or its activities would or did affect

07:48AM   21      interstate or foreign commerce.

07:48AM   22              Third, Mr. Stancil became a member of that conspiracy

07:48AM   23      knowing of at least one of its objects or goals and personally

07:49AM   24      agreed and intended to help further or facilitate that scheme

07:49AM   25      or goal.

07:49AM   1          Finally, fourth, that the defendant knew or agreed

07:49AM   2   that one or more members of the conspiracy, not necessarily

07:49AM   3   Mr. Stancil, would or did commit at least two acts of

07:49AM   4   racketeering in furtherance of the conspiracy.  Because of

07:49AM   5   those two acts, racketeering acts, Your Honor, there are what I

07:49AM   6   would refer to as sub-elements that the United States would

07:49AM   7   have to prove beyond a reasonable doubt as well.  Those are in

07:49AM   8   regard to, as I said, two separate racketeering acts:  First,

07:49AM   9   acts relating to chemical weapons, and second, offenses

07:49AM   10  involving murder for hire.

07:49AM   11         As to acts relating to chemical weapons there are four

07:49AM   12  elements:

07:49AM   13         First, that there was an agreement again between two

07:49AM   14  or more persons in this case to use a chemical weapon, namely

07:49AM   15  Chloropicrin, which is a chemical that created airborne toxic

07:50AM   16  chemicals and it was used for nonpeaceful purpose, or that the

07:50AM   17  defendant induced another person to do any of the foregoing.

07:50AM   18         Secondly, that Mr. Stancil became a member of the

07:50AM   19  conspiracy knowing of at least one of its objects and again

07:50AM   20  intending to help accomplish it.

07:50AM   21         Third, that Mr. Stancil acted knowingly.

07:50AM   22         Fourth, that the offense took place within the United

07:50AM   23  States.

07:50AM   24         In regard to offenses involving murder for hire, there

07:50AM   25  are three elements again that the United States would have to

07:50AM   1   prove beyond a reasonable doubt:

07:50AM   2         First, that Mr. Stancil conspired to use, in this

07:50AM   3   case, cellular telephones operating on interstate networks.

07:50AM   4         Secondly, the defendant used the telephones to do so

07:50AM   5   with the intent that a murder be committed.

07:50AM   6         Third, that the defendant intended that the murder be

07:50AM   7   committed in exchange for something of pecuniary value, in this

07:50AM   8   case a monetary amount of U.S. currency.

07:51AM   9         Those are the elements, Your Honor, that would be

07:51AM   10   required to be proven beyond a reasonable doubt.

07:51AM   11         THE COURT:  Mr. Rodby, any disagreement with AUSA

07:51AM   12   Inciong's description of the elements of Count 1?

07:51AM   13         MR. RODBY:  No, Judge.

07:51AM   14         THE COURT:  Then I'll turn back to Mr. Inciong to set

07:51AM   15   forth the evidence that the government would offer in this

07:51AM   16   case, if it were to proceed to trial.

07:51AM   17         MR. INCIONG:  Yes, Your Honor.  At trial the United

07:51AM   18   States would produce evidence to show the following:

07:51AM   19         That from a precise date unknown, but by at least in

07:51AM   20   or about 2012 and continuing to about June of 2020, Mr. Stancil

07:51AM   21   and others, known and unknown, were members and associates of

07:51AM   22   the Miske Enterprise.  Members of the Miske Enterprise operated

07:51AM   23   principally under the direction and protection of Michael J.

07:51AM   24   Miske, Jr., who used his power over members and associates of

07:51AM   25   the Miske Enterprise, his reputation for violence in the

07:51AM    1    community, and the various corporate entities under his control

07:51AM    2    to enrich the members and associates of the Miske Enterprise,

07:51AM    3    and to embolden their criminal activities.

07:52AM    4         The evidence would show that the Miske Enterprise,

07:52AM    5    including its leadership, membership and associates constituted

07:52AM    6    an enterprise, as that term is defined in 18 U.S.C. Section

07:52AM    7    1961, subparagraph 4, that is a group of individuals and

07:52AM    8    entities associated in fact.

07:52AM    9         The evidence would show that the Miske Enterprise was

07:52AM    10   engaged in and its activities affected interstate and foreign

07:52AM    11   commerce and that the enterprise operated within the District

07:52AM    12   of Hawaii and elsewhere and constituted an ongoing organization

07:52AM    13   whose members and associates functioned as a continuing unit

07:52AM    14   for a common purpose of achieving the objectives of the Miske

07:52AM    15   Enterprise.

07:52AM    16        The evidence would show that beginning at least in or

07:52AM    17   about 2012 Mr. Stancil and others, known and unknown, were

07:52AM    18   employed by and associated with the Miske Enterprise.  And they

07:52AM    19   willfully and knowingly combined, conspired, confederated and

07:53AM    20   agreed together and with each other to violate the racketeering

07:53AM    21   laws of the United States; that is, to conduct and participate

07:53AM    22   directly and indirectly in the conduct of the affairs of the

07:53AM    23   enterprise through a pattern of racketeering activity.

07:53AM    24        The racketeering activity to which Mr. Stancil and

07:53AM    25   others agreed included, among other things, actuating to

07:53AM 1    chemical weapons in violation of Title 18 U.S.C. Code, Section

07:53AM 2    229 and actuating to murder for hire in violation of Title 18

07:53AM 3    U.S.C., Section 1958.  In addition, Mr. Stancil assisted with

07:53AM 4    multiple assaults on behalf of Mr. Miske and the Miske

07:53AM 5    Enterprise.

07:53AM 6         In regard to acts relating to chemical weapons, the

07:53AM 7    evidence would show beyond a reasonable doubt that on

07:53AM 8    consecutive nights, that being March 4th and 5th, 2017,

07:53AM 9    Mr. Stancil and other members and associates of the Miske

07:53AM 10   Enterprise participated in chemical weapon attacks on two

07:54AM 11   nightclubs, The District Nightclub and the Ginza Nightclub both

07:54AM 12   located here in Honolulu Hawaii.

07:54AM 13        Both attacks were carried out on Mr. Miske's orders.

07:54AM 14   For each attack, coconspirator and enterprise member, Jacob

07:54AM 15   Smith, served as the driver.  In advance of one attack, the

07:54AM 16   second one to be specific, Mr. Smith drove to Mr. Stancil's

07:54AM 17   residence.  At that time, Mr. Stancil provided Smith with the

07:54AM 18   toxic chemical Chloropicrin, which the evidence would show is

07:54AM 19   capable of causing death, temporary incapacitation, or

07:54AM 20   permanent harm to humans.  Mr. Stancil provided Smith with a

07:54AM 21   quantity of Chloropicrin capable of causing harm to a large

07:54AM 22   number of people.

07:54AM 23        Mr. Stancil also gave Smith advice on how best to

07:54AM 24   release the Chloropicrin in the nightclub.  This was based in

07:54AM 25   part on Mr. Stancil's knowledge because he himself had

07:54AM  1   previously disbursed Chloropicrin in a crowded Waikiki

07:55AM  2   nightclub in 2015 at the direction of his codefendant Michael

07:55AM  3   J. Miske.

07:55AM  4        After obtaining the Chloropicrin from Mr. Stancil,

07:55AM  5   Smith gave it to another coconspirator, Ashlin Akau, who

07:55AM  6   entered the targeted nightclub, this was the Ginza Nightclub,

07:55AM  7   and released the Chloropicrin.  The release of this chemical

07:55AM  8   resulted in nightclub patrons scrambling for the exits as they

07:55AM  9   experienced burning in their eyes and difficulty breathing.

07:55AM  10       In regard to acts involving murder for hire --

07:55AM  11       THE COURT:  Before we get there, Mr. Inciong, is it

07:55AM  12  fair to say that the evidence would also show that the

07:55AM  13  Chloropicrin used in these attacks on the Ginza and District

07:55AM  14  nightclubs were sourced from either a distributor or a --

07:55AM  15       MR. INCIONG:  Manufacturer.

07:55AM  16       THE COURT:  -- manufacturer outside the State of

07:55AM  17  Hawaii and therefore traveled via interstate commerce to enter

07:56AM  18  our state?

07:56AM  19       MR. INCIONG:  That is correct, Your Honor.

07:56AM  20  Chloropicrin is not manufactured anywhere in the State of

07:56AM  21  Hawaii.  There are multiple sources but any of them would

07:56AM  22  require the Chloropicrin to be brought from outside the

07:56AM  23  District of Hawaii into the state.

07:56AM  24       THE COURT:  Thank you.

07:56AM  25       MR. INCIONG:  Thank you.

| | | |
|---|---|---|
| 07:56AM | 1 | In regard to acts involving murder for hire, the |
| 07:56AM | 2 | evidence would show that in or around 2016 Mr. Stancil joined a |
| 07:56AM | 3 | murder for hire conspiracy in which Victim 1 was the target. |
| 07:56AM | 4 | The conspiracy involved, among others, Michael J. Miske, Jr., |
| 07:56AM | 5 | Lance Bermudez, Dae Han Moon, and Jacob Smith.  The evidence |
| 07:56AM | 6 | would show that Mr. Miske placed the murder contract on Victim |
| 07:56AM | 7 | 1 because Miske believed Victim 1 had cooperated with law |
| 07:56AM | 8 | enforcement and provided information about Miske's criminal |
| 07:56AM | 9 | activities. |
| 07:56AM | 10 | Mr. Miske asked to meet with Lance Bermudez and Jacob |
| 07:56AM | 11 | Smith at the Kamehameha Shopping Center in the Kalihi area of |
| 07:56AM | 12 | Oahu.  During that meeting Miske expressed his interest in |
| 07:56AM | 13 | having Victim 1 killed and offered $60,000 for the murder. |
| 07:57AM | 14 | Lance Bermudez agreed to take the job and thereafter met with |
| 07:57AM | 15 | Mr. Stancil in Waimanalo, Hawaii.  During that meeting, |
| 07:57AM | 16 | Mr. Stancil showed Lance Bermudez where Victim 1 lived in |
| 07:57AM | 17 | Waimanalo.  Mr. Stancil knew he was showing Bermudez where |
| 07:57AM | 18 | Victim 1 lived so Bermudez could kill Victim 1 and carry out |
| 07:57AM | 19 | the murder for hire contract as directed by Michael J. Miske. |
| 07:57AM | 20 | The evidence would then show that Lance Bermudez |
| 07:57AM | 21 | enlisted Dae Han Moon to also aid in the murder, and on |
| 07:57AM | 22 | multiple occasions Bermudez and Moon traveled to Waimanalo and |
| 07:57AM | 23 | laid in wait outside of Victim 1's home in the early morning |
| 07:57AM | 24 | hours waiting for Victim 1 to come outside.  Both Bermudez and |
| 07:57AM | 25 | Moon were armed with firearms and were prepared to shoot and |

| | | |
|---|---|---|
| 07:57AM | 1 | kill Victim 1 if he left the residence.  However, Victim 1 |
| 07:57AM | 2 | never left the residence or came outside while they were |
| 07:58AM | 3 | present.  Mr. Bermudez was eventually called off by Miske and, |
| 07:58AM | 4 | thereafter, Bermudez and Moon made no further attempt to commit |
| 07:58AM | 5 | the murder.  Victim 1 was never killed as the result of the |
| 07:58AM | 6 | conconspirators' efforts the evidence would show. |
| 07:58AM | 7 | The evidence would also show that in setting up these |
| 07:58AM | 8 | various meetings, the involved coconspirators communicated on |
| 07:58AM | 9 | cellular telephones, thereby affecting interstate commerce. |
| 07:58AM | 10 | Finally, Your Honor, in regard to assaults that were |
| 07:58AM | 11 | committed in furtherance of the enterprise, the evidence would |
| 07:58AM | 12 | show beyond a reasonable doubt that Mr. Stancil introduced Jake |
| 07:58AM | 13 | Smith to Mr. Miske.  Mr. Miske was interested in having Smith |
| 07:58AM | 14 | to be basically on call to commit assaults and other acts of |
| 07:58AM | 15 | violence whenever Miske needed or asked Smith to do so. |
| 07:58AM | 16 | The evidence would show that for multiple of these |
| 07:58AM | 17 | assaults that were directed by Mr. Miske John Stancil served as |
| 07:59AM | 18 | the driver.  One example, the evidence would show that in |
| 07:59AM | 19 | January of 2016 Mr. Stancil drove Jake Smith to assault Victim |
| 07:59AM | 20 | No. 2, an elderly used car dealer who had bid against |
| 07:59AM | 21 | Michael Miske at car actions.  After the assault by Mr. Smith, |
| 07:59AM | 22 | Mr. Stancil served as the getaway driver. |
| 07:59AM | 23 | In another incident that occurred in October of 2015 |
| 07:59AM | 24 | in the Wendy's parking lot near the Honolulu airport, |
| 07:59AM | 25 | Mr. Stancil himself participated in the assault of Victim 3, |

| | | |
|---|---|---|
| 07:59AM | 1 | another used car dealer who had bid against Miske at the |
| 07:59AM | 2 | Manheim car auction.  On that occasion, Mr. Stancil and another |
| 07:59AM | 3 | coconspirator, Kaulana Freitas, punched Victim No. 3 multiple |
| 07:59AM | 4 | times after getting the signal to do so by Michael J. Miske. |
| 07:59AM | 5 |          That, Your Honor, would be a summary of the |
| 07:59AM | 6 | government's evidence at trial. |
| 07:59AM | 7 |          THE COURT:  Mr. Stancil, do you understand the |
| 07:59AM | 8 | evidence that the government would offer in this case if it |
| 07:59AM | 9 | were to proceed to trial? |
| 08:00AM | 10 |          THE DEFENDANT:  Yes, Your Honor. |
| 08:00AM | 11 |          THE COURT:  And do you agree, sir, that what the |
| 08:00AM | 12 | government said you did is true? |
| 08:00AM | 13 |          THE DEFENDANT:  Yes, Your Honor. |
| 08:00AM | 14 |          THE COURT:  In your own words, Mr. Stancil, please |
| 08:00AM | 15 | describe what you did that makes you guilty of Count 1. |
| 08:00AM | 16 |          THE DEFENDANT:  These crimes, Your Honor. |
| 08:00AM | 17 |          THE COURT:  By "these crimes," you mean working with |
| 08:00AM | 18 | others, pursuant to an agreement, and the others included |
| 08:00AM | 19 | Mr. Miske your codefendant in this case? |
| 08:00AM | 20 |          THE DEFENDANT:  Yes, Your Honor. |
| 08:00AM | 21 |          THE COURT:  And the idea of working with Mr. Miske was |
| 08:00AM | 22 | profit motive; is that fair to say? |
| 08:00AM | 23 |          THE DEFENDANT:  Sure. |
| 08:00AM | 24 |          THE COURT:  Among the things that you worked with him |
| 08:00AM | 25 | on, in pursuit of the profit motive of the group that you were |

08:00AM   1    working together with, was with respect to what happened in

08:00AM   2    2017 regarding the two nightclubs that Mr. Inciong described?

08:00AM   3            THE DEFENDANT:  Yes.

08:00AM   4            THE COURT:  What was the reason for targeting these

08:00AM   5    two particular clubs, the Ginza and The District.

08:00AM   6            THE DEFENDANT:  To my understanding, they are

08:01AM   7    competitive nightclubs; so I mean maybe for me it wasn't

08:01AM   8    profit, but I guess for his business.

08:01AM   9            THE COURT:  "His" being Mr. Miske?

08:01AM   10           THE DEFENDANT:  Yes, that's my brother.

08:01AM   11           THE COURT:  And when you say profit motive and

08:01AM   12   competitive nightclubs, it's because Mr. Miske owned and

08:01AM   13   operated other nightclubs --

08:01AM   14           THE DEFENDANT:  Separate, yeah.

08:01AM   15           THE COURT:  -- in the 2017 time frame that were

08:01AM   16   competitors to the Ginza and The District nightclubs?

08:01AM   17           THE DEFENDANT:  Yes.

08:01AM   18           THE COURT:  And I assume Mr. Miske didn't like that.

08:01AM   19           THE DEFENDANT:  That, yeah, and just the group of

08:01AM   20   people I guess.

08:01AM   21           THE COURT:  The people who operated those nightclubs?

08:01AM   22           THE DEFENDANT:  Yes, they had some differences I

08:01AM   23   guess.

08:01AM   24           THE COURT:  Okay.  So what did you do to carry out and

08:01AM   25   target these two particular nightclubs?

08:01AM   1              THE DEFENDANT:  On the second night, I met with Jake
08:01AM   2    and supplied him with Chloropicrin.
08:01AM   3              THE COURT:  "Jake" meaning, Jake Smith?
08:01AM   4              THE DEFENDANT:  Yes.
08:01AM   5              THE COURT:  And you provided him with Chloropicrin so
08:01AM   6    that he could do what?
08:01AM   7              THE DEFENDANT:  Disburse it and I guess make
08:02AM   8    everybody's eyes water and make them exit the nightclub.
08:02AM   9              THE COURT:  So the idea -- this Chloropicrin you
08:02AM   10   obtained from -- it's part of the fumigation process, as I
08:02AM   11   understand it; is that fair?
08:02AM   12             THE DEFENDANT:  Yes, what it is is it's a warning
08:02AM   13   agent that when they tent the home with the tents, they shoot
08:02AM   14   this chemical called Vikane into the tent.  And Vikane is the
08:02AM   15   deadly one that causes harm, that can kill you if you are
08:02AM   16   left -- a cat or a human fell asleep, that is the dangerous
08:02AM   17   chemical Vikane.  But it does not leave a residue, and it's --
08:02AM   18   you can go in and inhale it and just fall, I guess.
08:02AM   19             THE COURT:  Because it's odorless?
08:02AM   20             THE DEFENDANT:  It's odorless and it doesn't leave a
08:02AM   21   residue.  What Chloropicrin is, is Chloropicrin is a warning
08:02AM   22   agent that when you -- say I forgot my football and my picture,
08:02AM   23   whatever I wanted to take with me from my home and a homeowner
08:02AM   24   tries to open the tent and go in there, it's a warning
08:03AM   25   detergent (verbatim) -- I mean, it's a warning agent that

08:03AM   1    deters you from entering the premises and exposed to the

08:03AM   2    harmful chemical Vikane; so that's what that is, yeah.

08:03AM   3              THE COURT:  But Chloropicrin also has harmful effects,

08:03AM   4    as I understand it.

08:03AM   5              THE DEFENDANT:  Yes.  Your eyes water and you cough

08:03AM   6    and it causes difficulty breathing.

08:03AM   7              THE COURT:  How did you have access to that chemical?

08:03AM   8              THE DEFENDANT:  It's a chemical -- it's a pesticide

08:03AM   9    that Kama'aina Termite uses.

08:03AM  10              THE COURT:  How did you get it via Kama'aina Termite,

08:03AM  11    was that a company that employed you?

08:03AM  12              THE DEFENDANT:  No, I didn't employment.  I can easily

08:03AM  13    go there.  I don't know how exactly how I obtained it, but it

08:03AM  14    was a while ago, like, I guess seven years ago.  I don't

08:03AM  15    exactly remember how I actually got it, but I remember it being

08:03AM  16    in my possession.

08:03AM  17              THE COURT:  And you got it from Kama'aina, however you

08:03AM  18    got it from, specifically?

08:03AM  19              THE DEFENDANT:  That's the root of -- the origin of

08:03AM  20    where it would come from, I'm aware of, yeah.

08:03AM  21              THE COURT:  So you provided this Chloropicrin to

08:03AM  22    Mr. Smith for both chemical attacks on --

08:03AM  23              THE DEFENDANT:  That's incorrect, not the first one.

08:04AM  24    The first one I believe in numerous 302s and on recording it

08:04AM  25    says that Kaulana Freitas gave it to Jake the first night, who

08:04AM  1   acquired it from KTPC.  So I can't really recall if I got it

08:04AM  2   from Kaulana, but the second night I believe, yeah, I gave it

08:04AM  3   to Jake Smith.

08:04AM  4           THE COURT:  And you showed him how to use it as well?

08:04AM  5           THE DEFENDANT:  I didn't show him, I explained it to

08:04AM  6   him, and he kind of smelled it, and then he was, like, What the

08:04AM  7   hell is this?  And then he noticed the effects it could cause

08:04AM  8   and then that's how he knew.

08:04AM  9           THE COURT:  And, to your knowledge, he then employed

08:04AM  10  it in the second attack, he disbursed it -- or had someone do

08:04AM  11  it --

08:04AM  12          THE DEFENDANT:  Someone do it on his behalf.  Ashlin

08:04AM  13  Akau did it on his behalf to my understanding.

08:04AM  14          THE COURT:  And to your understanding, did it have the

08:04AM  15  desired effect on the patrons of that nightclub?

08:04AM  16          THE DEFENDANT:  To my understanding it did.  From

08:04AM  17  reading 302s, I've read that, yeah, there was like a pepper

08:04AM  18  spray and mace, and that's the effect that it has.

08:04AM  19          THE COURT:  Now, in the time frame 2016, Mr. Inciong

08:05AM  20  described a dispute that Mr. Miske apparently had with a person

08:05AM  21  identified in the information as Victim 1 -- or in your plea

08:05AM  22  agreement as Victim 1.

08:05AM  23          THE DEFENDANT:  Yes.

08:05AM  24          THE COURT:  Tell me about that.

08:05AM  25          THE DEFENDANT:  So it was like -- I believe you are

08:05AM   1    aware of Wayne Miller.

08:05AM   2              THE COURT:  Yes.

08:05AM   3              THE DEFENDANT:  So Wayne Miller in a 302 says it was

08:05AM   4    because of a girl.  One of Miske's girlfriends, my brother's

08:05AM   5    girlfriends.  So it was because of that and also it was

08:05AM   6    information, I guess, a rumor going around that the individual

08:05AM   7    was cooperating with law enforcement; so I guess it's safe to

08:05AM   8    say it was two-fold, Your Honor.

08:05AM   9              THE COURT:  If I'm understanding what you're saying,

08:05AM  10    Victim 1 was a competitor paramour for someone who Miske was

08:05AM  11    interested in?

08:05AM  12              THE DEFENDANT:  I'm not sure of the details about

08:05AM  13    that, but a competitor, but maybe cooperating on someone.

08:05AM  14              THE COURT:  No, but you said that there was a love

08:05AM  15    interest of some sort.

08:05AM  16              THE DEFENDANT:  Oh, yes a love interest, yes.  One of

08:05AM  17    Miske's girlfriends in the past.

08:05AM  18              THE COURT:  And that Victim 1 was also interested in

08:06AM  19    the same person?

08:06AM  20              THE DEFENDANT:  Yes.  I suppose, yeah.

08:06AM  21              THE COURT:  And that was one of the things that

08:06AM  22    motivated Mr. Miske to want to take action of some sort against

08:06AM  23    Victim 1?

08:06AM  24              THE DEFENDANT:  I believe so, yes.

08:06AM  25              THE COURT:  And Mr. Miske offered some money?

08:06AM   1        THE DEFENDANT:  It wasn't, to my knowledge, but after

08:06AM   2   talking to people I guess, yeah, I guess that's what it is.

08:06AM   3   But it wasn't -- the dollar amount wasn't exactly brought to

08:06AM   4   me, but after finding information out, yeah.  I guess that's my

08:06AM   5   understanding.  Yes, Your Honor.

08:06AM   6        THE COURT:  And your understanding was that he wanted

08:06AM   7   to dispose of Victim 1, "he" being Mr. Miske?

08:06AM   8        THE DEFENDANT:  Yes.

08:06AM   9        THE COURT:  And it was your understanding that

08:06AM  10   Mr. Miske obtained the services of Mr. Lance Bermudez to

08:06AM  11   accomplish that goal?

08:06AM  12        THE DEFENDANT:  Yes.

08:06AM  13        THE COURT:  And what was your role then in assisting

08:06AM  14   or providing services to Mr. Bermudez to help him carry that

08:06AM  15   out?

08:06AM  16        THE DEFENDANT:  I just was in the area, and I guess

08:06AM  17   they had their own plot or thing going.  And then I was in the

08:07AM  18   area, because that's where I was residing at the moment, that's

08:07AM  19   where I was living.

08:07AM  20        THE COURT:  In Waimanalo?

08:07AM  21        THE DEFENDANT:  Yes.  So they came and saw me and

08:07AM  22   said, Hey, do us a favor and show us where so and so lives,

08:07AM  23   where Victim 1 lives.  And I was, like, okay.  So I showed them

08:07AM  24   where the house was.

08:07AM  25        THE COURT:  Who is "they"?

08:07AM   1              THE DEFENDANT:  Bermudez and I don't know if he was
08:07AM   2    with someone else.
08:07AM   3              THE COURT:  Was it Mr. Moon as well?
08:07AM   4              THE DEFENDANT:  No, it wasn't Mr. Moon.  Mr. Moon was
08:07AM   5    in prison.  But like I said, Your Honor, it was I guess 2015,
08:07AM   6    '16 that's eight years ago.
08:07AM   7              THE COURT:  I understand.
08:07AM   8              THE DEFENDANT.  But if I can recall correctly eight
08:07AM   9    years ago, I believe it was just Bermudez.  I know for sure it
08:07AM   10   wasn't Moon, but I'm not sure if it was somebody else with
08:07AM   11   Bermudez.
08:07AM   12             THE COURT:  And you knew where Victim 1 resided
08:07AM   13   because he lived in the same rough neighborhood?
08:07AM   14             THE DEFENDANT:  In the vicinity I guess you could say.
08:07AM   15   In the same town.
08:07AM   16             THE COURT:  Do you know why Mr. Bermudez wanted to
08:07AM   17   know where Victim 1 lived?
08:07AM   18             THE DEFENDANT:  I guess he's in a different
08:07AM   19   demographic, he's from a different area.  He's not from
08:07AM   20   Waimanalo.
08:07AM   21             THE COURT:  Do you know why he wanted to know --
08:08AM   22             THE DEFENDANT:  Oh, yeah, cause harm to number one,
08:08AM   23   yeah.
08:08AM   24             THE COURT:  Because you knew Mr. Bermudez wanted to
08:08AM   25   cause harm to Victim 1?

08:08AM    1                THE DEFENDANT:  Yes.  To victim 1, yes.

08:08AM    2                THE COURT:  And specifically you knew that he was

08:08AM    3    intending to kill him?

08:08AM    4                THE DEFENDANT:  Yes.

08:08AM    5                THE COURT:  And that was at the direction, as you

08:08AM    6    understood, of Mr. Miske?

08:08AM    7                THE DEFENDANT:  Yes.

08:08AM    8                THE COURT:  Are both counsel satisfied that a factual

08:08AM    9    basis for Mr. Stancil's plea of guilty to Count 1 has been

08:08AM   10    established?

08:08AM   11                MR. INCIONG:  Yes, Your Honor.

08:08AM   12                MR. RODBY:  Yes, Judge.

08:08AM   13                THE COURT:  Mr. Stancil, I'll turn to you, sir.  As to

08:08AM   14    Count 1 of the January 21, 2024 information, how do you plead,

08:08AM   15    sir:  guilty or not guilty?

08:08AM   16                THE DEFENDANT:  Guilty, Your Honor.

08:08AM   17                THE COURT:  The Court finds then that the defendant,

08:08AM   18    Mr. Stancil, understands the nature of this morning's

08:08AM   19    proceedings and is component to waive indictment and proceed by

08:08AM   20    information.  One of the facts that demonstrate that desire is

08:08AM   21    his execution of the AO 455 form which we discussed a bit

08:09AM   22    earlier.

08:09AM   23                The Court further finds that Mr. Stancil is component

08:09AM   24    to enter a knowing and informed plea and that he has

08:09AM   25    demonstrated that in spades.  This morning he is lucid, he is

08:09AM    1    without impairment, he is sober and thinking clearly.  And in

08:09AM    2    doing so, he has entered a knowing, informed and voluntary plea

08:09AM    3    of guilty to Count 1 of the information.  The Court finds that

08:09AM    4    he has done so without coercion, force or threat.

08:09AM    5        The Court finds that Mr. Stancil's plea of guilty is

08:09AM    6    supported by an independent basis in fact containing each of

08:09AM    7    the essential elements of Count 1 and that Mr. Stancil

08:09AM    8    understands both the trial and civil rights that he would have

08:09AM    9    in the absence of pleading, but nonetheless elects to plead

08:09AM   10    guilty knowing that doing so means that he is waiving and

08:09AM   11    likely losing these rights.

08:09AM   12        The Court finds further that in pleading guilty

08:09AM   13    Mr. Stancil understands the factors that the Court will

08:09AM   14    consider at the time of imposing sentence, including the

08:10AM   15    potential penalties applicable to a violation of Count 1.

08:10AM   16        Mr. Stancil, as you have acknowledged that you are in

08:10AM   17    fact guilty, I accept your guilty plea and adjudge you guilty

08:10AM   18    as charged of Count 1 of the information.  The Court orders the

08:10AM   19    plea agreement in this matter to be filed, but I do reserve

08:10AM   20    determination of whether to accept it until after a presentence

08:10AM   21    investigation and report have both been prepared.

08:10AM   22        May we get a sentencing date please?

08:10AM   23        THE CLERK:  May 15, 2024 at 2 p.m.

08:10AM   24        THE COURT:  Is that date and time acceptable with both

08:10AM   25    counsel?

08:10AM  1              MR. INCIONG:  For the moment, we will likely ask that

08:10AM  2   that be continued as indicated in our request in the plea

08:10AM  3   agreement.

08:10AM  4              THE COURT:  I understand.

08:10AM  5              MR. RODBY:  Likewise.

08:10AM  6              THE COURT:  All right.  Defendant is in custody, he is

08:10AM  7   remanded to the custody of the marshal service until the time

08:10AM  8   of sentencing.

08:10AM  9         Anything else that I can assist the parties with in

08:10AM  10  this matter?

08:10AM  11             MR. INCIONG:  No.  Thank you, Your Honor.

08:10AM  12             THE COURT:  Thank you both.

08:10AM  13             (Proceedings were concluded at 8:10 a.m.)

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

```
 1                    COURT REPORTER'S CERTIFICATE
 2           I, Gloria T. Bediamol, Official Court Reporter, United
 3    States District Court, District of Hawaii, do hereby certify
 4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,
 5    true, and correct transcript from the stenographically reported
 6    proceedings held in the above-entitled matter and that the
 7    transcript page format is in conformance with the regulations
 8    of the Judicial Conference of the United States.
 9
10           DATED at Honolulu, Hawaii, August 7, 2024.
11
12
13                              /s/ Gloria T. Bediamol
14                              GLORIA T. BEDIAMOL.
15                              RMR, CRR, FCRR
16
17
18
19
20
21
22
23
24
25
```